Welcome to the Ninth Circuit. We've got one case on the calendar this afternoon, Wang v. Chinese Daily News. Judge Trott is here by video from Idaho. Judge Trott, can you hear us? Yes, I can. Good afternoon. Good afternoon. And we've got 15 minutes to look for one side, and welcome back. I'm sure at least one side's happy to be back, maybe not the other. And when you're ready, counsel. Good afternoon, Your Honors. And may it please the Court, Michael Berger for the appellant, Chinese Daily News. And we are indeed pleased to be here arguing this case again, something we did last time we assembled for this purpose. This time we have guidance. Pardon me for interrupting you. The clock doesn't seem to be running. There we go. Okay, now it's started. Okay, it might look like it's running. Okay, go ahead. This time we have guidance from the Supreme Court that we didn't have two years ago in the form of their decision, of course, in Wal-Mart v. Dukes. Wal-Mart v. Dukes focused on two issues that are of critical importance to this case. First, whether you can recover damages at all in a 23b2 action, which plaintiffs have conceded now after Wal-Mart, cannot be done. And second, the Court also clarified and strengthened the requirements that a plaintiff has to meet at a certification hearing under Rule 23. They focused on 23a, which is something that we have focused on both in the briefs and in the oral argument two years ago. And I think if you look... Now, the other side says you've waived. The other side is wrong. Okay, why? I have cited you in the briefs to the place where we raised this issue in the briefs, and if the Court would like, I can easily supply a transcript of our last hearing where we argued this issue, and nobody on the bench seemed to feel there was a problem in discussing it. But I'm inclined to think that the other side may want to listen to this, is that the amount of attention you paid to it the first time around was understandable, because I don't think I'm talking out of school when I say this. The Supreme Court rather surprised the class action bar in paying as much attention as it did to 23a. Well, I was pleased to see that they came out the way that they did, and I think that they came out the way that we tried to argue this case two years ago. I believed then, and I believe now, that if you set aside Rule 23 for the moment and talk about any normal motion practice, the party who makes a motion has a burden of proof. And the question is, what is that burden of proof? That's what the Court went into in Walmart. What is a plaintiff's burden to show on a Rule 23 motion to certify the class for proceeding in that fashion? And what happened, put it in terms of this case, we have a complaint that was very broadly drafted. It said, for example, that all of the employees at Chinese Daily News were forced to work long hours with no meal or rest breaks. That was the bland assertion that they made in the complaint. They actually elevated that in their briefing later on, asserting to the Court that employees were forced to work 12-hour days without taking any breaks at all. Here's a question that occurs to me because of the path this case has taken. We had certification and we had notification to the class. We had postponement of the new notification to the class. We had a trial. We now have a fairly complete record. Ordinarily, of course, certification occurs fairly early on, sometimes based only on the complaint, sometimes based on some information that's come out during preliminary proof. But we are now in a position where we know a lot about the case. If we were to send this back to the district court to ask the district court whether part of the class could be certified under B-3 for damages, I assume the district court can look at the record it has now in front of it rather than looking back to the complaint merely? Well, that's an interesting aspect of this case, Your Honor, because that's why this is a little unusual. It is unusual. And as Your Honor knows, that's the stuff that takes place early on in the proceedings. And there is law, including cases from the Supreme Court, which I know we've cited to you in the briefs, that say when you're reviewing a certification order, the question is not what turns up later on. The question is, what did the district judge know at the time of the certification hearing? And it's that record that gets reviewed to determine whether error was made in certifying the class at all. I know. We know a lot of other stuff. Some of it, in fact, is favorable to our side. Some of it probably favorable to theirs. I think when you flesh out what happens, and I've tried to do that, in fact, in the briefs, let me look at this 23A question for you for a moment, because I do think that it's important. In the complaint and in their briefing, they continuously harp on the idea that these people were worked in some sort of a sweatshop where they were never allowed to take a break, never allowed to get a meal. First off, it's wrong. But second, there is not one declaration that they filed. And they filed ten of them. And I pulled the pieces out of that, and I quoted them for you at page five of our original appellant's reply brief to make it easy for you. Everything that they said at the certification hearing about mealtimes, nobody verified what the complaint said. Nobody said, I had to work 12 hours without breaking for a meal. All they would say was, sometimes we worked through a meal. Sometimes we worked and we ate at our desk. Things that we've all done for years. What we also know is that Chinese Daily News paid each of its employees a meal allowance. Now, if you want to make any inference from the fact that they paid these people a meal allowance, it was that they expected them to take that meal allowance and buy a meal with it and eat it. That was their work day. I want to shift for a moment to the reporters. Before you shift, let me ask you this. Your supplemental brief focused, in terms of the variation in proof and the liability and so on, on meal breaks and primarily reporters. But those were not the only people in the class. They were not. And meals were not the only thing at issue in the class. That's all true. Can you speak to some of the other people and some of the other issues? For example, failure to pay overtime and so on. Well, it's entirely possible that there were other issues. And that's also involved in this. As you say, we have a long history with this case. One of the other things that plays into this was the opt-out issue. And remember, we had an early opt-out election at which, to everybody's shock apparently and amazement, some 80 plus percent of those given a ballot said, no, we do not want anything to do with this case. I think it's important that you take a look at that opt-out form. It's in the record. We've quoted it a number of times in the briefs. But what the form told the employees of Chinese Daily News was to sign this. And it was prepared by the judge, by plaintiff's counsel, in both English and Chinese. And it said, quote, my signature means that I do not want to be a part of this class action lawsuit, end quote, period. And those are the opt-out forms that the district judge set aside? Yes. And complicated that matter by saying that I also am going to set aside declarations filed by employees who opted out because I intended that that opt-out form only relate to the damages action, not to the injunctive action. But that's not what it said. And that's not what anybody reading that form would think. Yeah, but the problem with that one is not merely the ambiguity, if that's the right word, for what the form was intended to encompass, but the district judge set it aside largely because of coercive tactics it found that your client had engaged in during the opt-out process. That was certainly part of it. Yeah, it sure was. Well, and I'd be happy to go back into that because we... Is that on appeal in front of us now? Well, everything is in front of you now. The original decision was vacated and it was remanded to you. Well, I understand that, but what was originally appealed to us? Oh, that was clearly originally appealed to you. The whole opt-out process was appealed to you, the validity of the opt-out process. And I suggest to you, if you look at those, please, I implore you, look at the declarations that the district judge used to support her conclusion that this entire area was rife with coercion. There were two declarations. I attached them both to our original proponents' reply brief, and I lined out those parts of the declarations to which she had sustained objections. There's almost nothing left. What you've got left to support this conclusion that the newspaper facility was rife with coercion is the definitions. Well, let me say, I'm not speaking for my colleagues on this point, but the reason we're re-hearing the case is because of Wal-Mart. Is there anything in Wal-Mart that would cause us to revisit our conclusion the last time around that the district judge finding a fact as to coercion is wrong? Well, clearly there's nothing in Wal-Mart that deals with that issue. The reason that I bring it up is because we're talking about what evidence was in front of the district judge at the time of the certification hearing. And one of the things that was there was a series of declarations filed by people, employees, who thought they had opted out and could therefore talk to Chinese Daily News and its attorneys. And if you look at those... Judge Fletcher, Judge Fletcher, this is, it's a little difficult because I'm on a delay. Can I interrupt with a couple of questions? Of course. Counsel, it isn't clear to me exactly what you're asking us to do. On page 31 of your brief, you say, when the plaintiffs failed to provide evidence at the class certification hearing to substantiate the broad allegations in their complaint and their briefs, the case should have ended. Then your last line is, CBN prays that the judgment be reversed. Are you asking us, what are you asking us to do, to vacate and send some of this back to start over again or to somehow grant summary judgment in your favor? Precisely, what are you asking us to do, number one? Number two, what's the effect, if any, of Brinker on all of this stuff? Well, all right. First, what I'm asking you to do is basically what the Supreme Court did in Walmart, is to look at the record and say, this doesn't do it. This does not satisfy Rule 23. This case should not go any further. So I'm suggesting to this Court... Well, I don't know whether I have an advantage or a disadvantage, because I now have the case. But it went back to the district court to determine whether or not a smaller class or a different configuration of the class would then survive and go forward. So in other words, the Walmart case, as I understand it, hadn't ended. It had been reversed. The certification had been reversed and returned to the circuit and then to the district court for further proceedings. You know, it wasn't the end of the case. Amended complaints were permitted, and then issues as to whether or not those amended complaints is presently in front of me. So it wasn't the end of the case. You're not saying that we should now enter judgment in some form in your favor, and that's the end of the case. Or are you saying, look, it goes back to the district court. What was done before by the district court was incorrect by virtue of Walmart, and now the district court has to take a look at such issues as you admit, such issues as to, well, we're not talking just about the people who had denied appropriate meal, time for their meals and so forth. We're also talking about people who didn't get appropriate overtime or worked inappropriate hours or that sort of thing. I understand that. And that was what I was trying to get at. In what was before the district judge at the time of the certification hearings, there was conflict in the declarations. There were people who said, yeah, we got all our meal time. We don't know what they're talking about. And in contrast to what happened in Walmart and in this Court's later decision in Ellis, which reversed and sent back to the district court, the Court made no resolution of those conflicts, simply said, well, there's evidence and I'm going to certify, and went on. And I think that was wrong. At a minimum, what this Court should do is to send the case back to the district judge, vacating everything that happened and going back to the first hearing, to the certification hearing, to determine whether, in fact, there should be a certification, and if so, on what basis, and then proceed. Okay. What about Judge Trott's question of Brinker? Brinker is an interesting case. I don't think it has, in fact, a lot to do with this case, because the primary people who were involved with the meal break issue were the reporters. And I can't emphasize too strongly that the reporters worked away from the office. They worked out of their homes. They worked in the field. They were able, as the declarations and as their own testimony showed, they were there. They were not under the supervision of Chinese Daily News. They weren't anywhere where Chinese Daily News could either provide or not provide a meal break in any common sense meaning of the word. They were able to start work in their terms whenever they thought they should. You'll find testimony in there from one or more of them that will say, well, I started work, which is to say at home. I started work at 9 o'clock. And then I, when the end of the day got there, I didn't have time to take a 30-minute meal break. I have to ask, what would have been wrong with starting work at 8.30 and building in another 30 minutes so that you could take a break? When you have the ability to set your own hours, then it seems to me incongruous to be arguing that you didn't have enough time in the day that you set up in order to take a 30-minute meal break. Brinker says that you have to provide it. I think to the extent that it has any meaning at all, it has significance only for those people who are actually working on site at the Chinese Daily News headquarters, but not to the people like the reporters, the salespeople, and even the drivers who were all working outside and who, according to their own testimony and their own declaration evidence, took their time, took their meals at times of their choice. I think that that's what needs to happen. I think you need to have a look at this and tell the district judge she did it wrong. Okay. You've come to the end of the time. Let me ask my colleagues here on the bench, though, first. I'll make sure you get enough time to respond, but does anyone else want to ask questions at this time before we hear from the other side? Judge Trott? Yeah, I just have an atmospheric that's probably somewhat irrelevant, but in your supplemental excerpts of record filed on January 3, page 12 thereof, you have a document filed in 2004 that says there was a ruling upholding the election result but finding that witnesses were untruthful, blah, blah, blah. CDN appealed and the appeal remains pending. Whatever happened to that? I honestly don't know what to tell you. We were not involved in the case that long ago, and I'm not sure what that refers to. Okay, well, it's in the excerpts that somebody filed. It got my attention. I'll try to find out, but I don't know offhand. It's not that germane. Okay. Let's hear from the other side, and we'll make sure to give you a chance to respond. Thank you. Good afternoon, Your Honors. My name is Randy Renick. I represent the appellees and the class in this matter. I will, in a preliminary matter, respond to whether or not I'm thrilled to be here. The answer is probably no, I'm not thrilled to be here, but I will tell you I am excited to be here. And I can also tell you exactly what it is that the plaintiffs asked for in this matter, and that is that the judgment be affirmed in its entirety. Good luck on that. In its entirety? That's correct. The record is certain and thorough on all of the Rule 23. I misspoke. I apologize. I didn't misspeak. Not on the B-2 issue. The we have conceded, let me see if I can get things off a little better here. We have conceded on the B-2 issue that certification of those claims was not appropriate. So I apologize. We ask that with the exception of the B-2 certification, that the judgment be affirmed in its entirety. What we do know is that by looking at what transpired below, that is that many of the issues of the eight of the issues being dealt with on summary judgment, a very efficient 17-day jury trial on the legal issues, and then a subsequent two-and-a-half-day trial on the 17-200 claims, on the penalty claims, that this was, in fact, a case that could be managed under B-3. And it was managed very, very effectively by the district court judge. And that is the analysis that's necessary under B-3. That is, do common issues predominate or do individual issues predominate such that it's not an effective or efficient way to handle it? We know this case was manageable. We know B-3 was satisfied because it was managed. Let me interrupt for one second because the other side started out by telling us essentially we're not entitled to look at anything that happened that you're now talking about. We're bound by the record at the time the district court made its decisions. I think you take exception to that. Am I right? Actually, I could have it either way. The record is ample at the time of the class certification back in 2005, both under the 23-A standard that was applied then, which is the same as the standard that Dukes has, as well as under B-3. So if you take the record that existed seven-and-a-half years ago, it should, that certification should be affirmed. But interestingly enough, if you look at what happened since that time, as I referenced the summary judgment rulings, not to mention the court's order here two years ago, when it looked at the summary judgment ruling de novo. It looked at those common facts and was able to reach the exact same conclusion that the trial court did, was that that was a common claim, proved by common evidence, with a common answer. So I realize it's a little evasive to say I'll take it either way, but the record here is clear. It was good in 2005. The judge handled it very efficiently, very effectively, and common answers were obtained. And that's consistent with the court's views. So I take it you'd be comfortable, for example, with us remanding with instructions to enter summary judgment on behalf of CDN on some of these issues, should we see that that's the appropriate thing to do? Well, I think that this panel has already reached the opposite conclusion and affirmed with the summary judgment ruling on behalf of the plaintiffs in this case. In fact, we were going to say you're overlooking. Is that the footnote regarding B-3? Yes. I understand that. So the court affirmed under, as I read it, the court affirmed under B-2 and didn't reach, this panel, didn't reach the issue of B-3. Right. But the record's quite clear on B-3. The record was clear back then and the record is clear now that there was ample common evidence that could be proved by way of common proof on each and every one of these claims. I want to comment for a moment on the common proof as it pertained to the reporter's exemption claim. And I do want to point out there's sort of a nuance to that claim that makes it quite amenable to common proof, and that is that that claim involved the creative executive exemption, which is quite a bit different from the executive exemption or the outside sales exemption that we oftentimes see, that we see in cases such as the citizen manager cases or the Vannoli case or the countrywide, I'm sorry, Wells Fargo or the countrywide case. They involved an exemption which requires quite a bit of evidence to be provided and allows for variations. Here on the creative exemption, on the creative professional exemption, it was an all or nothing evaluation that was done both by the trial court and here. And that is the defendant said all of the work is exempt and the plaintiff said none of the work is exempt. There was no need to try and figure out how much was exempt and how much wasn't exempt. It was either an all or nothing proposition. I don't see how that gets us very far with the questions that are in front of us. I mean, assuming that we stick with our decision that I don't think is put in question under Walmart as to whether they were exempt or not exempt, that's a categorical decision as to the type of work they were doing. But that doesn't tell me much at all as to what encouragement they might have had not to take Grinch Blakes or coercion. I mean, that's a different question. Oh, certainly. Let me address the Brinker question. I think Judge Trott raised it a few minutes ago. Yes. Brinker, how does Brinker impact this case? I think they try to run from Brinker. I think the comment was it doesn't matter. Brinker makes, really provides a backbone to affirm this case. We might remember that the judge applied the proper standard back in 2005. She was, did quite a job seeing what the future was going to lay out. I think that's quite apparent in her rulings. Her comment about the Court may not see the B-2 the way I do, so she alternatively certified it under B-3. But she got Brinker right. And the standard on, the standard that she imposed in this case back at the time of trial in 2007 when there was great dispute on this issue was that the employer had a duty to provide a meal break. As we all know, that is exactly the standard that was provided in Brinker. Interestingly. Well, no, there was a fight under, pre-Brinker as to whether or not the employer's duty under California law went beyond merely providing the time, but also did the work during that time. And as we know what Brinker decided. They said, well, they have to provide the time. They can't coerce them to perform work. But if the employee decides to do work, that's their business. Interestingly enough, that's an issue we never have to get to. Okay. Because the reason is here, Brinker never took any measures. They didn't even have a policy to provide meal breaks. It's virtually unheard of. It's absurd in today's, in California, that an employer wouldn't have a policy to provide breaks. But that's what an amendment is required, is that they've got an affirmative obligation to provide. The first measure there would be to have a policy. But we have findings. Did they, excuse me, let me interrupt for one second. Did the employer have a meal allowance that was applicable to these reporters? Yes. And the meal allowance is actually quite curious because what the meal allowance is exactly what the Brinker court warned us of. It's an incentive for employees to work through their meal breaks. Because what Chinese Daily News was trying to accomplish was to keep workers, keep them on the clock, keep them working, keep them writing articles, keep them on the presses during work. And that's what the meal incentive was used for. But I did want to say more. What do you mean? Well, frankly, I'm not sure we need to go this far on Brinker because they never made it. It's undisputed. You made a factual assertion. Tell me what you mean. Sure. The meal allowance. Yes. They provided the employees, I believe it was $4 a day to buy the meal. The reason, the incentive behind that was so that employees would take the $4, they'd grab a hamburger at McDonald's or wherever it was, and they'd get right back to work. It did not. Where is that in the record? Where is that in the record? The $4 incentive. Where is it in the record that it was the purpose of trying to override the meal break by forcing them to go to McDonald's and grab a hamburger? I'm presenting that as a logical argument flowing from the evidence. But you can't cut the phrase. It's not. Was there a finding of fact to that effect? I mean, your inferences don't arise out of nowhere. They have to arise out of something. I didn't find that in the record as a finding of fact. Did I miss it? No, you did not, Your Honor. The factual foundation is found in the motion for summary judgment that I believe was heard back in 2006 and affirmed by this Court. The fact that they were provided the $4. I take that. Is it the amount of money that it was $4, which you point to as being an incentive for them not to go out and have their lunch at McDonald's, but rather buy it and then bring it back? I'm trying to figure out. It seemed to me that the newspaper could do one of two things, offer a meal allowance, not offer a meal allowance. Let's assume that they didn't offer a meal allowance. Would that be looked upon as, gee, that is an incentive to go out and get a meal? I'm just trying to figure out. Maybe I'm trying to follow Judge Trott's point, is that since you can argue it either way, I simply, I think maybe we have to give some deference to the trial court if they found, if the trial judge found that given the way it was presented, the inference and the Court finds that that was an incentive not to go out and get a meal. But I don't know that that's either one in the record, and it strikes me that you can make the argument with equal force, the opposite argument with equal force. I raise the issue because Brinker You're taking liberties with a factual record is what I hear. I apologize, Your Honor. I don't think that it actually ever becomes relevant, and here's why. Brinker tells us But you brought it up. You brought it up. You're the one that made the argument. You said that it was established effectively that this was a way to make sure they didn't take meal breaks, and I was looking for something in the record that supports that. If I might cite to this Court's ruling two years ago regarding the meal break claim, the Court wrote, The evidence presented to the jury was sufficient to support a finding that CDN did not provide reporters with meal breaks. That is the Brinker standard. Judge Trott, you asked earlier how Brinker affects this case. Brinker substantiates that Judge Marshall got it right in 2005. She set the correct standard, that it was appropriate as a common issue under 23A, and that common evidence was available to prove the claim. In fact, the common evidence that was put on at trial was that CDN had no policy. CDN never told its employees they were allowed to take a break, and CDN on numerous occasions encouraged the employees to skip their meal and rest breaks and not to take it unless they went to the bathroom. On that record, both the trial – both the jury and this panel found that Chinese Daily News had failed to provide meal breaks. That's the standard under Brinker. I apologize for taking it one step further, maybe as a – to discuss what Brinker adds, which is not only is the failure to provide a meal break a violation, but in the occasions where the employer actually has a policy for a meal break, that a class claim is possible because there was incentive not to take – not to take that break. Is there anything to send back to the district court under your view? Anything – should we send it all to sort through these claims and see what the district court judge believes would be appropriate for certification or not? I don't believe so. The – as I pointed out, Judge Marshall had a pretty good sense of where things were going to go. She got the meal break standard correct, and she pointed out that in the event that the B-2 standard was not to be upheld by a reviewing court, that she – she alternatively certified it under B-3. And then as I discussed, B-3 was the appropriate certification given how the case was handled on a class-wide basis. So because the judge was so thorough in how she evaluated the evidence, applied the standard, there is no basis – there's nothing that needs to be remanded. Let me ask you a question with which we began, and you said I'll be happy either way. But let me put a finer point on it. Let's assume that I'm not necessarily happy with saying certification at the time the initial motion was made, but I'm tempted to give the district judge a chance to look at certification based on the entire record of what actually happened. I anticipate that the other side doesn't really want to go there. What grounds would we have for allowing the district judge to look at the entire record that's been made if she is to reevaluate whether class certification was proper either as she did it or to certify subclasses or to modify in some fashion? I suppose what would happen is that we would refile a motion for class certification. No, I don't want – I'm not asking what would happen. I'm asking you to justify looking at this retroactively based upon the record that turns out to have been made that probably wouldn't have been made if this case were going forward from the outset right now. If I understand your question correctly, I think that the same conclusions would be reached, and that is we have the same common questions under 23A. No, you're not understanding my question. My question is there are two possible ways in which we can look at the class certification question. We can look at the case as it was in front of the district judge when she initially certified the case of the class and say, was that right at that time? Or we can say, well, as it turns out, as we're sending it back, she knows a lot more. And she, if we send it back, can now look for purposes of certification at the entire record. Which time can she look at? And if she can look at the later time for deciding whether certification is proper, what's the justification for allowing her to look at it based on the entire record? I think that from a procedural perspective, we would be back in front of the judge free to provide whatever evidence was in the record to support a class certification finding under Rule 23. And why is that? You think that. Do you have any authority that might push us in that direction? Quite frankly, I think this case is unique. I don't know of any other cases, at least in the last 10 or 15 years, which have gone all the way through where there has been a class certification. There has been numerous summary judgment resolutions. There's been a two-and-a-half-week trial. There's been a two-and-a-half-day bench trial. And then it goes up on appeal. In some effect, it goes up on appeal twice. I don't know that any court has ever addressed that issue. And, again, the risk is sounding trade. I don't think that it is material whether the court looks at the January 2005 date or effectively today. I think the record is quite ample on either to affirm. But that wasn't my question. I think that the Court has to make an assumption or ask you to assume that maybe I didn't think so as of the time that the initial motion was made. I think that Judge Marshall would then be asked to consider whatever additional evidence came in at summary judgment and at trial to affirm the summary and do it again. Although I think she would be – I may be reiterating myself, but I think she would    could have used to affirm the summary and be applied the same standard on the same facts and reach the exact same conclusion. Okay. Is there anything further? Anything further, Judge Trott? No. Thank you. Thank you very much. We put two minutes on the clock. Thank you, Your Honor. Let me get back to the last question, Judge Fletcher, that you ended with and at least go back to the Supreme Court's decision in Falcon where it says we do not, of course, judge the propriety of a class certification by hindsight. We judge it by what happened at the class certification hearing. And I think that's where this case is. This case never should have been certified based on the evidence that they presented at that class certification hearing. It simply doesn't support the allegations. Well, but you see, I think I disagree with you in this sense. Under the law as it then stood in the Ninth Circuit, particularly as to B-2 and the possibility of predominance and so on, I mean, you read the opinion, we thought the class was properly certified under B-2 and what went forward permissibly went forward. We have since been informed that that's not right. But I don't think the district judge was making a mistake under the law of the Ninth Circuit as it then stood, nor indeed do I think the Ninth Circuit was making a mistake under the law as it then stood. It's clear that it's a mistake now. But it's not as though the district court was engaging in an illegitimate enterprise. So what do we do with the information that came in properly at the time? Well, I think what we – I go back to the foundation that we were trying to find out what it was that was set there. We now know what the law is. It may not have been what the law was at that time, but that is what the law is now. And that's what we have to apply. But your point is that you can't, no matter what happened, no matter what happened in terms of an evidentiary showing post-certification, that's very interesting, it's very nice, it's very painful, very expensive, et cetera, et cetera, et cetera, but you can't consider it. That's your point. That's my point. What would prevent the district – what would prevent somebody, if we were to send it back, from augmenting the record with additional information and effectively using what already happened when the matter is being reheard? That's what you would do if you were on the other side. That's what I would do if you sent us back to do that, because a lot of things came in at those later hearings. But we're not inviting that. That I think support our position there that it should not have been certified. Well, it may be, it seems to me possible, that the nature of the trial was such that if she's looking at certification again, she might want to look at the record made and maybe there are a few more things she wants to know. Maybe she'll want to supplement the record she has, complete as though it might now look to us. It could well be, Your Honor, and I know that at the time we, or at least our predecessors, urged Judge Marshall to at most set up subclasses, because the class that she was certifying had things that just made no sense to do on a class-wide basis that was that broad. The reporters are not the same as the people who work in the copy room. The truck drivers are not the same as the outside salespeople. They just have very different issues. Right. As I think you implicitly recognized in your supplemental briefs by only talking about the reporters. Well, they were, in fact, the largest monetary group involved here. The reporters, I think, are your strongest part of the case. I got it. Okay. Thank you, Your Honor. Any further questions from the bench? Okay. Thank you. The case now submits. Thanks for nice arguments. We will now be in adjournment, but let me speak for just a moment to the students. We will conference on this case, and then at the end of that conference, I think Judge Trott's likely to stay in Idaho, but I'm going to come back out, and if he has time, Judge Breyer will come back out to answer questions. Okay, we're now in adjournment. All rise.
judges: Breyer, Trott, Fletcher